Shoham J. Solouki (SBN 278538)
SOLOUKI SAVOY LLP
316 West 2nd Street, Suite 1200
Los Angeles, California 90012
Telephone: (213) 814-4940
Facsimile: (213) 814-2550
Email: shoham@soloukisavoy.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLAS R. MARKS, and LORRI A. BOWLING, as individuals and on behalf of all participants in the Trader Joe's Company Retirement Plan,<br><br>Plaintiffs,<br><br>v.<br><br>TRADER JOE'S COMPANY,<br><br>Defendant. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1. ERISA Breach of Fiduciary Duty of Prudence<br><br>2. ERISA Failure to Monitor Fiduciaries |

Plaintiffs Nicolas R. Marks ("Marks") and Lorri Bowling ("Bowling") (collectively, "Plaintiffs"), individually and as representatives of participants and beneficiaries of the Trader Joe's Company Retirement Plan ("Plan") submit this Complaint on behalf of the Plan against the Plan Sponsor Trader Joe's Company ("Trader Joe's") for breaching its ERISA fiduciary duties in the management, operation and administration of the Plan.

# INTRODUCTION

1.     A 401(k) plan is an employer-sponsored defined contribution retirement plan that enables employees to make tax-deferred contributions from their salaries to the plan. Employers also may make contributions into employee accounts. Typically, plan participants direct the investment of their accounts, choosing from the lineup of options offered in the plan.

2.     In a defined contribution plan, participants' retirement benefits are limited to the value of their own individual accounts, which is determined solely by employee and employer contributions plus the amount gained through investment in the options made available in the plan less expenses. *See* 29 U.S.C. §1002(34).

3.     Because retirement savings in defined contribution plans grow and compound over the course of the employee participants' careers, poor investment performance and excessive fees can dramatically reduce the amount of benefits available when the participant is ready to retire. Over time, even small differences in fees and performance compound and can result in vast differences in the amount of savings available at retirement. As the Supreme Court has explained, "[e]xpenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1825 (2015).

4.     The impact of excessive fees on employees' and retirees' retirement assets is dramatic. The U.S. Department of Labor has noted that a 1% higher level of fees over a 35-year period makes a 28% difference in retirement assets at the end of a participant's career. U.S. Dep't of Labor, A Look at 401(k) Plan Fees, at 1–2 (Aug. 2013).[1]

---

[1] Available at https://dol.gov/sites/default/files/ebsa/about-ebsa/ouractivities/resources-center/publications/401kfeesEmployee.pdf. Last visited on December 2, 2019.

5.      The marketplace for retirement plan services is established and competitive. As of December 31, 2018, the Plan had $1,629,409,314 in net assets, which makes in one of the top or largest plans (based on assets) to participants. As a result, the Plan has tremendous bargaining power to demand low-cost administrative and investment management services and well-performing, low cost investment funds.

6.      However, instead of leveraging the Plan's tremendous bargaining power to benefit participants and beneficiaries, Trader Joe's chose inappropriate, higher cost mutual fund share classes and caused the Plan to pay unreasonable and excessive fees for recordkeeping and other administrative services.

7.      ERISA imposes strict fiduciary duties of prudence and loyalty on covered retirement plan fiduciaries. An ERISA fiduciary must discharge his responsibility "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters" would use. 29 U.S.C. § 1104(a)(1). These duties require fiduciaries to act "solely in the interest of [plan] participants and beneficiaries." *Id.*

8.      Trader Joe's, as the Plan Sponsor, breached its fiduciary duty of prudence and loyalty and mismanaged the Plan by paying excessive recordkeeping fees to the Plan's recordkeeper, Capital Research & Management Co. ("Capital Research") by failing to limit Capital Research's asset-bassed fees to a reasonable amount. This breach cost the Plan millions of dollars over the course of the relevant time period.

9.      Plaintiffs, individually and as the representatives of a class consisting of the Plan's participants and beneficiaries, bring this action on behalf of the Plan under 29 U.S.C. §§ 1132(a)(2) and (3), to enforce the Trader Joe's liability under 29 U.S. C. § 1109(a), to make good to the Plan all losses resulting from its breaches of fiduciary duties, and to restore to the Plan any lost profits.

1
## JURISDICTION AND VENUE

2       10.     This Court has subject matter jurisdiction over Plaintiffs' claims under

3   ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331 because this

4   action arises under the laws of the United States of America.

5       11.     Venue is proper in the Northern District of California under ERISA

6   § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this

7   District, the Trader Joe's resides within this District, and/or the alleged breaches of

8   the duties imposed by ERISA took place in this District.

9
## PARTIES

10  **The Plan**

11      12.     The Plan was established and is maintained by a written plan

12  documents as required by 29 U.S.C. § 1102(a)(1).

13      13.     The Plan is an employee pension benefit plan within the meaning of 29

14  *U.S.C. § 1002(2)(a), and an "individual account plan" or "defined contribution*

15  plan" under 29 U.S.C. §1002(34). Employees who are eligible to participate in the

16  Plan contribute to their individual accounts through payroll deductions.

17      14.     As of December 31, 2018 (the last date upon which mandated

18  disclosures were filed with the Department of Labor), the Plan had 46,6602

19  participants and beneficiaries and $1,629,409,314 (close to two billion dollars) in

20  net assets.

21  **The Defendant – Trader Joe's**

22      15.     Trader Joe's is an American chain of grocery stores headquartered in

23  Monrovia, California. On its website, Trader Joe's reports that it has 488 sotres in

24  41 states and the District of Columbia.

25      16.     Trader Joe's is the Plan Sponsor under 29 U.S.C. §1002(21)(A)(i) and

26  (iii). Trader Joe's is a fiduciary to the Plan under 29 U.S.C. §1002(21)(A)(i) and (iii)

27  because upon it has the sole authority to appoint and remove members of the Plan

28

-4-

Committee, amend or terminate, in whole or part, the Plan, and is designated as a fiduciary under the Plan.

17.     Trader Joe's is also the administrator of the Plan and, as such, is a fiduciary of the Plan with respect to the conduct and transactions from which its liability arises here.

**The Plaintiffs**

18.     Plaintiff Nicolas R. Marks is a resident of Saint Petersburgh, Florida. Marks was employed by Trader Joe's from March of 2016 through February 15, 2017. Marks was a participant in the Plan under 29 U.S.C. §1002(7) from April 1, 2016 until February 15, 2017 because he and his beneficiaries were eligible to receive benefits under the Plan.

19.     Plaintiff Lorri A. Bowling is a resident of Tampa, Florida. Bowling was employed by Trader Joe's from April of 2014 through September 3, 2015. Bowling was a participant in the Plan under 29 U.S.C. §1002(7) from August 7, 2014 until September 30, 2015 because she and her beneficiaries were eligible to receive benefits under the Plan.

## BACKGROUND FACTS

**Trader Joe's Caused Plan Participants to Pay Excessive Recordkeeping Fees**

20.     Trader Joe's chose Capital Research to serve as the Plan recordkeeper and investment platform. Capital Research is a wholly owned subsidiary of The Capital Group Companies, Inc., which is a Delaware company that traces its roots to 1931. As of June 30, 2019, Capital Research had approximately $2.2 trillion in discretionary assets under management.

21.     Capital Research is the investment adviser to the American Funds family of mutual funds. Its fees are generally based on a percentage of assets under invested in the American Funds. Capital Research's fees are paid by the American Funds to Capital Research based on the previous month's daily net asset levels.

Capital Research advertises that the fees it receives from the American Funds "are generally not negotiable."

22.     Capital Research also receives fees directly from the Plan for recordkeeping. For example, in 2018, it received a reported $183,075 in direct compensation for recordkeeping services.

23.     Trader Joe's has not disclosed to Plan participants the precise amount of fees and/or income Capital Research collects from the Plan. However, Trader Joe's has disclosed that Capital Research receives "direct" and "indirect" fees and compensation. Discovery is need to identify exactly how much Capital Research is collecting, however, even with the limited information available to Plan participants it is apparent that Capital Research's fees and compensation is excessive.

24.     Recordkeeping is a necessary service for every defined contribution plan. Recordkeeping services for a qualified retirement plan, like the Plan, are *essentially fixed and largely automated. The cost of recordkeeping and* administrative services depends on the number of participants, not the amount of assets in the participant's account.

25.     Recordkeeping for 401(k) plans like the Plan and its participants is fundamentally the same as keeping records for a brokerage account with a few additional points of data. It is a system where costs are driven purely by the number of inputs and the number of transactions. In essence, it is a computer-based bookkeeping system

26.     The greatest cost incurred in incorporating a new retirement plan into a recordkeeper's system is for upfront setup costs. After the Plan account is set up, individual accounts are opened by entering the participant's name, age, SSN, date of hire, and marital status. The system also records the amount of a participant's compensation he or she wishes to contribute each pay period through automated payroll deductions. Participants can go on line and change their contribution rate at any time.

-6-

27.    The cost of recordkeeping services depends on the number of participants, not on the amount of assets in the participant's account. Thus, the cost of providing recordkeeping services to a participant with a $100,000 account balance is the same for a participant with $1,000 in her retirement account.

28.    ERISA, through 29 U.S.C. §1106(a)(1)(C) and 29 U.S.C. §1108(b)(2), requires the Plan to pay "no more than reasonable compensation" for recordkeeping services to a "party in interest" such as Capital Research.

**The Plan Paid Unreasonable Record Keeping Fees to Capital Research**

29.    Trader Joe's chose to pay Capital Research asset-based recordkeeping fees. Those fees were paid in three ways:

> a. Capital Research received direct payments from the Plan for recordkeeping;

> b. Capital Research received revenue sharing payments from the mutual funds offered as past or present Plan choices.

> c. Capital Research received the difference between the higher operating cost of investor class shares of mutual funds on the Plan menu and the lower operating cost of institutional share classes of the same funds on the Plan menu.

30.    A single mutual fund with one portfolio and one investment adviser may offer more than one "class" of its shares to investors. Each class represents a similar interest in the mutual fund's portfolio. The principal difference between the classes is that the mutual fund will charge different fees and expenses depending on the class chosen.

31.    For example, an Investor class share in a mutual fund may charge an annual expense ratio of 1%, while the Institutional class share in that same fund with the same advisors and the same investments charges an annual expense ratio of 0.50%. Thus, an investor who purchases an Institutional class share will realize a

-7-

0.50% greater annual return on his/her investment compared to an investor who owns an Investor class share.

32.     In a revenue sharing arrangement, a mutual fund or other investment vehicle directs a portion of the expense ratio—the asset-based fees it charges to investors—to the 401(k) plan's recordkeeper putatively for providing recordkeeping and administrative services for the mutual fund. These revenue sharing fees increase the operating costs of the mutual fund, which are paid by the Plan participants who invest in those funds.

33.     Because revenue sharing payments are asset based, they bear no relation to a reasonable recordkeeping fee and can provide excessive compensation. Again, it is important to emphasize that fees obtained through revenue sharing are tethered not to any actual services provided to the Plan; but rather, to a percentage of assets in the Plan and/or investments in mutual funds in the Plan. As the assets in the Plan increase, so too increases the recordkeeping fees that Capital Research pockets from the Plan and its participants. One commentator likened this fee arrangement to hiring a plumber to fix a leaky gasket, but paying the plumber not on actual work provided but based on the amount of water that flows through the pipe. If asset based fees are not monitored, the fees sky rocket as more money flows into the Plan.

34.     Prudent fiduciaries monitor the total amount of revenue sharing a recordkeeper receives to ensure that the recordkeeper is not receiving unreasonable compensation. A prudent fiduciary ensures that the recordkeeper rebates to the plan all revenue sharing payments that exceed a reasonable per participant recordkeeping fee that can be obtained from the recordkeeping market through competitive bids.

35.     Trader Joe's elected to pay for Capital Research's recordkeeping services by offering retail Investor share classes of American Funds rather than lower priced Institutional class shares. Capital Research kept the difference between the operating costs of the higher cost Investor class shares and the lower cost Institutional shares.

-8-

1      36.    Capital Research also received revenue sharing from non-American

2  Funds offered by the Plan. Capital Research credited a portion of that revenue

3  sharing to Plan recordkeeping costs.

4      37.    As a result of this arrangement, Capital Research was paid an asset-

5  based fee for recordkeeping that was calculated based on the amount of assets

6  invested in American Funds multiplied by the difference in the cost of the share

7  classes of the funds.

8      38.    Although the percentages appear small, the extra fees cost the Plan

9  participants approximately a million dollars per year.

10     39.    Over the past six years, the Plan paid the following recordkeeping fees

11  in the amount of roughly $140 per participant. A reasonable recordkeeping fee for

12  the Plan is $40 per plan participant.

13     40.    The Plan paid much higher than a reasonable fee for Capital Research's

14  services, which caused the Plan to pay millions of dollars in excessive

15  recordkeeping fees.

16     41.    Had the Trader Joe's negotiated with Capital Research to cap the

17  amount of revenue sharing to a reasonable fee or ensure that all unreasonable fees

18  were returned to the Plan, as other loyally and prudently administered plans do, the

19  Plan participants would have benefitted from lower administrative costs and fees.

20     42.    Despite having nearly two billion dollars in Plan assets, Trader Joe's

21  failed to negotiate a preferred rate for recordkeeping with Capital Research. In doing

22  so, Trader Joe's breached (and continues to breach) its fiduciary duty to the Plan.

23  **The Committee Failed to Seek Competitive Bids for Recordkeeping**

24     43.    Trader Joe's appointed the following individuals to serve on the

25  Investment Committee ("Committee") for the Plan: (1) Dan Blane; (2) Bryan

26  Palbaum; (3) Mitch Nadler; (4) Sharon Drabeck; and (5) Laurie Mead. The

27  Committee was charged with ensuring that the Plan was adiministered consistent

28  with all of ERISA's requirements.

44.     There are numerous recordkeepers in the marketplace who are capable of providing a high level of services to the Plan, and who will readily respond to a request for proposal. These recordkeepers primarily differentiate themselves based on price, and vigorously compete for business by offering the best price.

45.     To ensure that plan administrative and recordkeeping expenses are and remain reasonable for the services provided, prudent fiduciaries of large defined contribution plans put the plan's recordkeeping and administrative services out for competitive bidding at regular intervals of approximately three years, and monitor recordkeeping costs regularly within that period.

46.     A competitive bidding process for the Plan's recordkeeping services would have produced a reasonable recordkeeping fee for the Plan. This competitive bidding process would have enabled Trader Joe's to select a recordkeeper charging reasonable fees, or to negotiate a reduction in recordkeeping fees and a proper rebate of any excess expenses paid by Plan participants for recordkeeping services with Capital Research.

47.     The failure by the Committee and Trader Joe's to seek competitive bids, and negotiate proper rebates of unreasonable fees, was a breach of their duty of prudence to the Plan and caused the Plan to pay excessive recordkeeping fees.

**Capital Research is Investing Plan Participant Funds for Its Own Benefit**

48.     In what is tantamount to an admission of excessive fees and a breach of the duty of prudence, at the end of each fiscal year, Capital Research returns a portion of the excessive fees that it has been collecting on a monthly basis from the Plan and its participants.

49.     Rather than negoatiate a reasonable fee, Trader Joe's allows Capital Research to charge the Plan, by what all parties seem to agree, excessive fees on a monthly basis. This money, the money that Capital Research returns at the end of the year, should have be in Plan participants' individual accounts and invested in stocks, bonds, and other retirement investment vehicles for the benefit of Plan

1  participants. Instead, Capital Research collects excessive fees on a monthly basis,
2  invests the excessive fees for its own benefit, makes money for itself by investing
3  Plan participants' retirement savings, and finally returns a portion of the excessive
4  fees to the Plan at the end of the fiscal year.

5      50.    With this arrangement, Trader Joe's allows Capital Research to fund its
6  own investment and/or earn interest on money that belongs to the Plan Participants.
7  This is a rank violation of ERISA's fundamental principle to act solely in the
8  interest of plan participants and beneficiaries. This arrangement shows a failure of
9  process and a breach of the duty of prudence.

10                    **ERISA'S FIDUCIARY DUTY STANDARDS**

11      51.    ERISA imposes strict fiduciary duties of loyalty and prudence upon
12  Trader Joe's as Plan fiduciaries. Under ERISA, a fiduciary is expected to "discharge
13  his duties with respect to a plan solely in the interest of the participants and
14  beneficiaries and for the exclusive purpose of providing benefits to participants and
15  their beneficiaries." *See* 29 U.S.C. § 1104(a)(1)(A)(I)

16      52.    A "prudent" fiduciary in discharging his or her duties, also must act
17  "with the care, skill, prudence, and diligence under the circumstances then
18  prevailing that a prudent man acting in a like capacity and familiar with such matters
19  would use in the conduct of an enterprise of a like character and with like aims," *see*
20  29 U.S.C. § 1104(a)(1)(B).

21      53.    ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries.
22  29 U.S.C. §1105(a) provides a cause of action against a fiduciary for (1) knowingly
23  participating in a breach by another fiduciary; (2) enabling a breach by another
24  fiduciary; or (3) knows of a breach of duty by another fiduciary and fails to cure
25  such breach of duty.

26      54.    29 U.S.C. §1132(a)(2) authorizes a plan participant to bring a civil
27  action plan under 29 U.S.C. §1109 to enforce a breaching fiduciary's liability to the
28  Plan.

55.   Section 1109(a) provides a breaching fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary," and "shall be subject to such other equitable or remedial relief as the court may deem appropriate."

## CLASS ACTION ALLEGATIONS

56.   29 U.S.C. §1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

57.   Plaintiffs have standing to bring these ERISA claims because there is a causal connection between the Trader Joe's actions and actual harm to an ERISA Plan in which Plaintiffs participated. "A plaintiff may seek relief under § 1132(a)(2) that sweeps beyond his own injury." *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 592-593 (8th Cir. 2009); *see also DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 256 (2008) (§1132(a)(2) does not provide a remedy for individual injuries distinct from plan injuries).

58.   In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the Plan under 29 U.S.C. §1132(a)(2), Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiffs seek to certify and to be appointed as representatives of a class defined as:

> All current and former participants and beneficiaries of the Trader Joe's Company Retirement Plan from December 20, 2013 through December 20, 2019.

59.   This action meets the requirements of Rule 23 and is certifiable as a *class action for the following reasons:*

a. The Class includes as many as 40,000 members and is so large that joinder of all members is impracticable.

b. There are questions of law and fact common to the Class because Trader Joe's owed fiduciary duties to the Plan and to all participants and beneficiaries and took the actions and omissions alleged herein as to the Plan and not as to any individual participant. Thus, common questions of law and fact include the following, without limitation:

(i) who are the fiduciaries liable for the remedies provided by 29 U.S.C. §1109(a);

(ii) whether the fiduciaries of the Plan breached their fiduciary duties to the Plan;

(iii) what are the losses to the Plan resulting from each breach of fiduciary duty; and

(iv) what Plan-wide equitable and other relief the court should impose in light of Trader Joe's breach of duty.

c. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs were harmed by Trader Joe's misconduct.

d. Plaintiffs will adequately represent the Class because they were participants in the Plan, have no interests that conflict with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent attorneys to represent the Class.

e. Prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (A) inconsistent or varying adjudications that would establish incompatible standards of conduct for Trader Joe's with respect to the discharge of its fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. §1109(a), and (B) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and

remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B) or (b)(3).

60.     A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and impracticable for individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be encountered in the management of this matter as a class action. Alternatively, then, this action may be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B).

61.     Plaintiffs' counsel are competent and experienced in litigating ERISA class actions. They will fairly and adequately represent the interests of the Classes and satisfy  Rule 23(g)'s requirements.

## FIRST CLAIM FOR RELIEF

### Breach of the Duty of Prudence
### Unreasonable Recordkeeping Fees

62.     Plaintiffs repeat and reallege each of the allegations in the foregoing paragraphs as if fully set forth herein.

63.     The scope of the fiduciary duties and responsibilities of Trader Joe's includes defraying reasonable expenses of administering the Plan for the sole and exclusive benefit of Plan participants and beneficiaries, and acting with the care, skill, diligence, and prudence required by ERISA

64.    ERISA imposes strict fiduciary duties of prudence and loyalty on covered retirement plan fiduciaries. An ERISA fiduciary must discharge his responsibility "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters" would use. 29 U.S.C. § 1104(a)(1). These duties require fiduciaries to act "solely in the interest of [plan] participants and beneficiaries." *Id.*

65.    Similarly, "us[ing] revenue sharing to benefit [the plan sponsor and recordkeeper] at the Plan's expense" while "failing to monitor and control recordkeeping fees" and "paying excessive revenue sharing" is a breach of fiduciary duties. *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014).

66.    Trader Joe's breached its fiduciary duty of prudence to the Plan by, among other things, (1) paying Capital Research unreasonable recordkeeping fees; (2) failing to adequately leverage the Plan's size to properly reduce fees; (3) failing to seek competitive bids for recordkeeping services during the relevant time period; and (4) allowing Capital Research to collect and keep excessive fees from Plan participants on a monthly basis, invest that money for the benefit of Capital Research, only to refund a portion of the money (excessive fees) to the Plan at the end of the fiscal year.

67.    Plan participants were damaged as a result of Trader Joe's breach of its fiduciary duty because it paid excessive recordkeeping costs and realized a lower return on Plan investments.

68.    Trader Joe's is personally liable under 29 U.S.C. §1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this claim and is subject to other equitable or remedial relief as appropriate

69.    Total Plan losses will be determined at trial after complete discovery in this case and are illustrated herein based upon the limited information that has been made available to Plan participants to date.

## SECOND CLAIM FOR RELIEF

### Failure to Monitor Fiduciaries

70.     Plaintiffs repeat and reallege each of the allegations in the foregoing paragraphs as if fully set forth herein.

71.     Trader Joe's is responsible for the appointment and removal of the Committee members who are named fiduciaries to the Plan.

72.     Because Trader Joe's had explicit fiduciary responsibility to appoint and remove the Committee members, Trader Joe's had a fiduciary responsibility to monitor the performance of the other fiduciaries, including the Committee members.

73.     A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not doing so

74.     *To the extent any of Trader Joe's fiduciary responsibilities were* delegated to another fiduciary, Trader Joe's monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

75.     Trader Joe's breached its fiduciary monitoring duties by, among other things: (a) failing to monitor its appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the excessive recordkeeping fees in violation of ERISA; and (b) failing to remove appointees whose performance was inadequate in that they continued to make imprudent decisions, all to the detriment of Plan participants' retirement savings.

76.     Trader Joe's failed to implement or follow any rational process for monitoring the performance of the Committee or determining whether the Committee was were fulfilling its fiduciary duties.

77.     As a consequence of Trader Joe's breaches of its fiduciary duty to monitor, the Plan suffered substantial losses. Had Trader Joe's discharged its fiduciary monitoring duties prudently as described above, the losses suffered by the

1   Plan would have been avoided. Therefore, as a direct result of the breaches of
2   fiduciary duty alleged herein, the Plan, and the Plaintiffs and Class members, lost
3   millions of dollars in their retirement savings.

4                              **PRAYER FOR RELIEF**

5           WHEREFORE, Plaintiffs pray for judgment as follows:

6           A.      A determination that this action may be maintained as a class action
7   under Federal Rule of Civil Procedure 23, that Plaintiffs shall serve as class
8   representatives and Plaintiffs' counsel shall serve as Class Counsel;

9           B.      A Declaration that Trader Joe's breached ERISA fiduciary duties as
10  described above;

11          C.      find and adjudge that Trader Joe's liable to make good to the Plan all
12  losses to the Plan resulting from each breach of fiduciary duties, and to otherwise
13  restore the Plan to the position it would have occupied but for the breaches of
14  fiduciary duty;

15          D.      determine the method by which Plan losses under 29 U.S.C. §1109(a)
16  should be calculated;

17          E.      award to the Plaintiffs and the Class their attorney's fees and costs
18  under 29 U.S.C. §1132(g)(1) and the common fund doctrine;

19          F.      order the payment of interest to the extent it is allowed by law; and

20          G.      grant other injunctive or equitable, or remedial, relief as the Court
21  deems appropriate.

22          Dated: December 30, 2019          Respectfully submitted,

23

24

25                                            Shoham J. Solouki (SBN 278538)
                                              SOLOUKI SAVOY LLP
26                                            316 West 2nd Street, Suite 1200
                                              Los Angeles, California 90012
27                                            Telephone: (213) 814-4940
28                                            Facsimile: (213) 814-2550

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Brandon J. Hill (Pro Hac Forthcoming)
Wenzel Fenton Cabassa, P.A.
1110 North Florida Avenue, Suite 300
Tampa, Florida 33602
Telephone: (813) 337-7792
Email: bhill@wfclaw.com

Michael C. McKay (Pro Hac Forthcoming)
5635 North Scottsdale Road, Suite. 170
Scottsdale, Arizona 85250
Telephone: (480) 681-7000
Email: mmckay@mckaylaw.us

-18-